PATE ET AL. *v.* BANK OF NEWTON ET AL.

[77 South. 601, Division B.]

1. BANKS AND BANKING. *Stockholders. Double liability. Time to sue.*
Under Laws 1914, chapter 124, section 59, imposing a double liability upon the stockholders of a bank, the obligation of such

stockholders is a primary and not a secondary liability and a suit against them may be maintained whenever it is reasonably apparent that the assets of the bank will not pay the depositors and there is no requirement to await a collection and application of the debts and property of the bank before bringing such suit against the stockholders.

2. Banks and Banking. *Increasing liabilities of stockholders. Constitutionality.*

Where a bank was chartered under the general laws of the state at a time when the Constitution expressly provided that all such charters could be repealed or amended by the legislature whenever in the judgment of the legislature it was for the public interest to do so, provided no injustice be done to the stockholders, no injustice was done such bank by Laws 1914, chapter 124, section 59, which while increasing the liability of a stockholder of the bank to the extent of the par value of his stock, at the same time guaranteed payment of depositors by the state.

3. Same.

The legislature may impose reasonable conditions upon the rights of either individuals or corporations as to their future contracts.

4. Banks and Banking. *Increasing liability of stockholders. Statute. Application.*

The liability of the stockholder of a bank, as to deposits, accrues with the making of the deposit, and not of the date of granting a charter to do business, while Laws 1914, chapter 124, section 59, increasing the liability of stockholders of banks, imposes liability upon the stockholders of banks incorporated before as well as after its passage, it applies only as to deposits actually made after its passage.

5. Constitutional Law. *Injury obligation of contracts. Increasing liability of stockholders of banks.*

The legislature has the power to change the liability of stockholders with reference to future contracts, even against charter stipulations, where the power to amend or repeal was reserved when the charter was issued.

6. Constitutional Law. *Right to raise question. Acceptance of statute. Banks and banking.*

Where the stockholders of a bank expressly authorized its directors to accept the depositor's guaranty act (Laws 1914, chapter 124, section 59) and held out this inducement to depositors to secure deposits, they are in a poor position to claim exemption from the effect of what they voluntarily did.

7. SAME.

    Section 59, chapter 124, Laws 1914, imposes liability upon the stockholders of banks whether incomporated before or after the banking act was passed, but this liability does not extend to deposits which were actually made before the passage of the act. As to deposits made prior to the passage of the act, the stockholder's liability will be measured by the law in force at the time of the making of the deposits which constitutes the contract between the bank and the depositor.

APPEAL from the chancery court of Hinds county.

HON. O. B. TAYLOR, Chancellor.

. Suit by the Bank of Newton and others against W. T. Pate and others. From an order overruling a demurrer to the bill of complaint, defendants appeal.

The facts are fully stated in the opinion of the court.

*Robt. Powell,* for appellant.

While insisting upon all of the grounds assigned under the demurrer, as associate counsel will discuss the other grounds, we shall confine ourselves in this brief to but one of the causes of demurrer, to-wit: That this cause was prematurely brought.

The court will see from the reading of the bill that the amount guaranteed under the law has not yet been ascertained since the bill alleges that suits are now pending to determine this amount.

The court will further see from a reading of the bill that the assets of the defunct bank have not yet been administered and that it will be impossible to ascertain the exact amount of the solvent assets unless this is done. It is true that the bill makes an estimate of what will probably be realized but that is simply a guess on the part of the appellee.

So we start out with the proposition that neither the guaranteed debts are yet known nor are the solvent assets of the bank yet ascertained. Section 59, Laws 1914, under which this suit is brought is as follows: Section 59, Liability of Stockholders. The stockholders of

every bank shall be individually liable, actually and ratably and not for one another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof in addition to the said stock, etc.

The court will see readily from an inspection of this law that the stockholders were only guarantors and secondarily liable for the debts of the defunct bank. The act says that the stockholders should be ratably liable, which can only mean that they should be compelled to contribute in proportion as the amount of their stock bears to the debt remaining after the assets of the bank have been exhausted. Is it not a self-evident proposition then, that the ratable portion of a stockholder cannot be ascertained unless the amount of the debts are known and the assets with which to pay them has been ascertained; unless this is done, any suit brought against the stockholders under this act is prematurely brought.

*Sidney L. McLaurin,* for appellants.

The charter of the Bank of Newton was a contract between the state of Mississippi and the incorporators. *Stone* v. *M. V. R. R. Co.,* 62 Miss. 607; *Forsdick* v. *Miss. Levee Com.,* 76 Miss. 859; *Miss. R. R. Com.* v. *G. & S. I. R. R. Co.,* 78 Miss. 750; *Baldwin, et al.* v. *Payne et al.* 12 Law Ed. 447; *Planters Bank* v. *Sharp et al.,* 12 Law Ed. 447; *Dartmouth College Case,* 4 Wheat. 518; *Piqua Branch of State Bank of Ohio* v. *Knoop,* 16 How. 369; *Dodge* v. *Woolsey,* 59 U. S. 331.

It was also a contract between the shareholders themselves. Also a contract defining the rights of depositors. *Baldwin* v. *Payne* (U. S.), 12 Law Ed. 447.

The law in force as to non-liability of stockholders at the time the charter was granted, necessarily became a part of the contract in the same manner and to the same

extent as if written in the charter. *Assurance Co.* v. *Phelps,* 77 Miss. 625; *Sherman* v. *Smith,* U. S. Law Ed. 163.

A charter under the general statute gives exactly the same rights, powers, privileges, whether articles of incorporation expressly embodied the statute or not. See *Sherman* v. *Smith* (U. S.), *supra.*

Legislative Question. All authorities cited by appellee in support of the proposition that the question of whether or not an injustice is done to stockholders is a legislative question, are decisions of state court. We cite in reply, *Baldwin* v. *Payne,* 12 Law Ed. 447; *Planters Bank* v. *Sharp,* 12 Law Ed. 447; *Piqua Branch State Bank of Ohio* v. *Knoop,* 16 How. 369; *Dodge* v. *Woolsey,* 59 U. S. (How.) 331.

The last-named case treats the subject so exhaustively that a careful analysis of it will render consideration of the other unnecessary.

Injustice to Stockholders. The legislature, by express terms of the constitution, was prohibited from doing an injustice to stockholders. It might be said that an act of the legislature, making stockholders liable for the debts of a solvent corporation, would not be an injustice to the stockholders. However, an act of the legislature amending a charter so as to make the stockholders individually liable for the debts of an insolvent corporation, would certainly be an injustice to the stockholders. That the liability would apply only to the future debts of of the corporation does not alter the situation. The directors and officers would have the right to continue the operation of the bank over the protests of any individual stockholder.

Therefore, the bank officers would have the right to accept new depositors. Thus, the stockholder, without his consent, would have to take money out of his pocket to pay the bank's debts to new depositors.

The case of *Sherman* v. *Smith,* 17 Law Ed. 447, decided by the United States supreme court, cited by appellee, construed the New York statute wherein the unlimited right of amendment was reserved to the legislature. In that case when the articles of incorporation were made, it was a part of the contract that the legislature should be the sole judge as to making amendment, and any amendment made by the legislature was to become a part of the contract, not only between the state and the incorporators, but also between the corporators themselves.

In the instant case the legislative power is limited by the constitution so that all amendments must be without injustice to the stockholder. What is injustice, is to be determined in each case in its final analysis by the United States supreme court. *Dodge* v. *Woolsey, supra.*

Appellee (brief, page 17) contends that no injustice can be done unless the law confiscates the property of the corporation; in other words, the statute may take the stockholder's money, and that will not be an injustice. The true view is that the corporation property cannot be confiscated, because it would be confiscation of the stockholder's property.

Estoppel. Appellee contends that even though the section as to individual liability he held to be unconstitutional, the stockholders are estopped from denying liability on two grounds: 1. That the bank continued business after the banking act was passed; 2. That the appellants (stockholders) took advantage of the guaranty provision of the act by affirmative action.

To the first proposition we say that the officers of the bank had the right, even over the protest of the stockholders to continue to receive deposits, and such action on the part of the officers could not estop the stockholders from defending against an unconstitutional statute.

The officers and directors were agents of the stockholders to transact the ordinary business of the bank, but were not agents with authority to bind the stockholders under an unconstitutional statute.

To the second proposition, we say: 1. That corporations are created with equality of stockholders as to profits and liabilities and all must stand on the same footing, and therefore, anything that binds one must bind all, and as all the stockholders did not participate, none are thereby made liable. 2. The bank act (section 68) expressly provides that if any section, part or provision of the act be unconstitutional, the balance of the act shall nevertheless remain effective.

Therefore, the fact that section 59 was unconstitutional and did not render the stockholders liable did not prevent the bank from continuing business and entering the guaranty system.

Suit Premature. The authorities cited by appellee to show that suit can be brought before assets of corporation are exhausted, are cases under peculiar statutes. The great weight of authority is that the assets of a corporation must be exhausted. American & English Encyclopedia of Law (1 Ed.), book 23, page 885, and notes on page 886.

The statute now under consideration does not confer right on the stockholders to sue under any circumstances. The liability is not "to" the depositor, but "for his benefit."

The suit is to be brought by the bank or its receiver, and is in the nature of an assessment to make up the deficiency after the assets of the bank are exhausted.

Charter Provisions. Referring back to page 7 of appellee's brief, we call attention to the fact that the case of *Payne* v. *Baldwin,* 3 S. & M. 661, cited was appealed to the United States supreme court and reversed. *Baldwin* v. *Payne,* 12 Law Ed. 447; *Planters Bank* v. *Sharp,* 12 Law Ed. 447.

*Watkins & Watkins,* for appellees.

Section 59, chapter 124, of the Laws of 1914, became effective March 9, 1914, and is valid and enforceable as to banks in existence at the time of its passage, whether the liability was created before or after the passage of the act.

(A) The state did not contract that the liability of stockholders would not be changed. At the threshold of this argument, we desire to direct the attention of this court to the fact that the liability created by section 59, of the act did not depend upon the bank's becoming a guaranteed bank.

This section became effective March 9, 1914. In other words, from and after March 9, 1914, the stockholders of banks became and were liable to depositors. As to whether any bank became a guaranteed bank was optional up to and including May 15, 1915. See section 45.

(1) Section 59 needs no construction. It says the stockholders of every bank admitted into the guaranty system. The language is plain and unambiguous. (2) It is contended by appellants that section 59 of the Act is unconstitutional, in that it deprives the appellant of property without due process of law. As we understand and appreciate their position, it is that at the creation of the appellee bank in 1899 no such liability existed, and that the legislature could not, as to an existing bank already chartered, change the liability of its stockholders. In other words, it is their contention that the state contracted with the stockholders of the appellee bank that they would not be subject to any such liability as is imposed in section 59 of the act in question. The fallacy of this position may be exposed by two observations: (1) there is no such contract in the charter of the appellee bank; (2) appellants had no vested right in the statutory law in force at the time the charter was granted. *Payne, Green & Wood,* v. *Baldwin,* 3 S. M. 661.

(1) The other observation is not only as obvious but equally as forcible. It is the contention of appellants that in 1899, when the bank was created, the Code of 1892, fixed the liability of the stockholders. In other words, section 909 of the Code of 1906, and section 4081 of Hemingway's Code was in force, fixing· the liability of stockholders at the unpaid subscription of stock; and, as we understand appellant's contention, it is that this statute entered into the charter, and the appellants have vested rights therein, which could not be changed or altered. The fallacy of this position however, is fully exposed in the case of *B. & L. Ass'n* v. *McElveen,* 56 So. 187, 100 Miss. 16. (2) The question presented as to the right of the legislature of the state of Mississippi to change and alter the liability of stockholders in a bank is a legislative and not a judicial one.

Section 178 of the constitution of Mississippi contains the following statement: "Corporations shall be formed under general laws only. The legislature shall have power to alter, amend, or repeal any charter of incorporation now existing and revokable, and any that may hereafter be created, when in its opinion, it may be for the public interest to do so. Provided, however, that no injustice shall be done to the stockholders.

Counsel for appellant in the case conceded the right of the legislature of the State of Mississippi to repeal or amend charters of corporations granted subsequent to the constitution of 1890, which of course includes the charter of the appellee bank in this case. It is their contention, however, that as we understand it, that section 59 does an injustice to the stockholders. The reply to this contention is obvious and two-fold. (1) The question presented is a legislative and not a judicial question. (2) It is not an injustice for the legislature to regulate the liability of stockholders in a corporation to the creditors thereof; provided, of

course, there is no confiscation of the structure of the corporate property itself.

(1) Legislative question. The direct question was presented in the case of *Davis Bank, Comm'r* v. *Moore,* 197 S. W. 295; *Railway Co.* v. *Gill*, 54 Ark. 101, 15 S. W. 18, 11 L. R. A. 452; *Leep* v. *Railway Co.,* 59 Ark. 407, 25 S. W. 75, 23 Ark. 264, 41 Am. St. Rep. 109; *Railway Co.* v. *Paul,* 64 Ark. 83, 40 S. W. 705, 37 L. R. A. 504, 62 Am. St. Rep. 154; *Woodson* v. *State,* 69 Ark. 521, 65 S. W. 465; *Ozan Lumber Co.* v. *Biddie,* 87 Ark. 587, 113 S. W. 796; *Ark. Stave Co.* v. *State,* 94 Ark. 27, 125 S. W. 1001, 27 L. R. A. (N. S.) 255, 140 Am. St. Rep.103, 6 R. C. L., subject, Constitutional Law, Par.111.

(2) No Injustice to Stockholders. We go further, however, and respectfully submit that by the passage of such a law, no injustice is done to stockholders. Corporations are the creatures of statute. The right of an individual to make contracts is a natural and inherent right, but a corporation is not a person; it is an artificial person; it derives it right to contract solely from legislative enactment. When the stockholders of the corporation received their charter, organized the bank and received certificates of stock, the liability to depositors rested upon certain legislative enactments but they took these shares with full knowledge that the legislature of the state of Mississippi had reserved the right to modify, alter, or amend this liability as the occasion might require. It is not an injustice to stockholders in a corporation merely to regulate their liability to the creditors of the corporation. If they were not satisfied with the additional liability imposed they were not obliged to continue to operate the corporation; they could stop and liquidate its affairs and terminate such liability as may have been incurred, but it does not lie in the mouth of stockholders of a corporation which is the creature of the legislature after the passage of an act in-

creasing the liability to creditors, to continue to operate
it under the changed legislative enactment, and then say
that the legislature had no right to pass the act. A con-
clusive reply to the proposition is that if the stockhold-
ers were dissatisfied with the changed legislative lia-
bility, it was their duty to stop and wind the corporation
up, and not continue the incurring of liability. We wish
now to direct the attention of the court to some of the
adjudications in respect to the subject-matter. *B. & L.
Assn.* v. *McElveen,* 100 Miss. 16; *Banking Comm'r* v.
*Bank,* 73 Miss. 96; *State* v. *Cotton Oil Co.,* 95 Miss. 6;
*Berea College* v. *Kentucky,* 211 U. S. 45, 29 Sup. Ct. 33,
53 L. Ed.; *Inland Fisheries* v. *Holyoke Water Power
Co.,* 104 Mass. 446, 451 6 Am. Rep. 247; *Holyoke Water
Power Co.* v. *Lyman,* 15 Wall. 500, 522, 21 L. Ed. 133,
140; *Close* v. *Glenwood Cemetery,* 107 U. S. 466, 476, 27
L. Ed. 408, 412, 2 Sup. Ct. Rep. 267, 274; *N. O., J. & G.
M. R. R. Co.* v. *Harris,* 27 Miss. 517. Appellants not in
position to question constitutionality of the act.

Under the Banking Act of 1914, the stockholders of
the Bank of Newton were not required to become part
of the guaranty system until the 15th day of May, 1915.
See section 45 (a). Though any bank possessing the
necessary qualifications, upon compliance with the pro-
visions of the act, it might become a guaranteed bank
and receive a certificate prior to such time. It will
therefore be seen that there were two ways by which a
state bank could become a member of the guaranty sys-
tem; (a) voluntarily by complying with the conditions
found in the act; (b) involuntarily by continuing to oper-
ate the bank until May 15, 1915. 6 R. C. L., subject,
"Constitutional Law," par. 95; *Daniels* v. *Tearney,* 102
U. S. 416, 26 Law. Ed. 187; *Ferguson* v. *Landrum,* 5
Bush. 230; See *Same* v. *Same,* 1 Bush. 548; *Vanhook* v.
*Whitlock,* 26 Wend. 43; *Lee* v. *Tillotson,* 24 Wend. 337;
*People* v. *Murray,* 5 Hill. 468; *Burlington* v. *Gilbert,*
31 Iowa, 356; *R. R. Co.* v. *Stewart,* 39 Iowa, 267; *Eust-*

*ance* v. *Bolls*, 150 U. S. 316, 37 Law Ed. 1111; *Fidelity & Deposit Co.* v. *Wilkinson County*, 109 Miss. 879, 3 R. C. L., subject, Banks, par. 26; 10 Cyc., page 669; *Sherman* v. *Smith*, 17 Law Ed. 163.

In the case of *McGowan* v. *McDonald* (Cal.), 52, A. S. R. on page 149, it was held that under a constitutional provision providing that all general and special laws for the formation of corporations may be altered or repealed, that the legislature had the power to change the law relating to the liability of stockholders, without impairing the obligation of contracts, although in so doing, obligations were imposed upon such stockholders for which they were not liable when they became such. *Reciprocity Bank*, 22 N. Y. 9; *Sleeper* v. *Goodwin*, 67 Wis. 577; *Tomlinson* v. *Jessup*, 15 Wall. 454; *Meadow Dam Co.* v. *Gray*, 30 Me. 551; *Gardner* v. *Insurance Company* (R. I.), 11 Am. Rep. 238; *Oliver Lee & Company's Bank*, 21 N. Y. 9; *Reciprocity Bank*, 22 N. Y. 9; *Barnes* v. *Arnold*, 51 N. Y. S. 1109; *Hagmayer* v. *Alten*, 72 N. Y. S. 623; *Arenz* v. *Ware*, 83 Ill. 25; *Weidenger* v. *Spruance*, 101 Ill. 278; *Sleeper* v. *Goodwin* (Wis.) 31 N. W. 335; *R. R. Co.* v. *Suprs. of Trempealean County*, 35 Wis. 257; *Attorney General* v. *R. R. Co.*, Id, 425-575; *Smathers* v. *Bank* (N. C.), 47 S. E. 893; *Whitman* v. *Bank*, 44 Law Ed. 587; *Williams* v. *Nail*, 55 S. W. 706; 4 Thompson on Corporations, page 1211; *Shufeldt* v. *Tolliver*, 8 Ill. App. 545; *Stanley* v. *Stanley*, 26 Maine 191; *Langley* v. *Little*, 26 Maine, 162; *Coffin* v. *Rich*, 45 Maine 507, Am. Dec. 509-510.

There is a suggestion in brief of counsel for appellants that the statute in question should be held to be unconstitutional, not because the deposit liabilities involved in this case were created prior to the passage of the act but because the act, on its face, would, as counsel claim, permit such recovery. The authorities which we have cited seem to maintain the doctrine that it is immaterial when the liability was created, whether be-

fore or after the passage of the act. We do not concede that the act would be unconstitutional if held applicable to deposit liabilities created prior to its passage, but we say in respect thereto that appellants are in no position to raise the question because they are not in that class. The deposit liabilities sought to be enforced against them were all created after the passage of the act, and after they voluntarily became a part of the guaranty system. In other words, the appellants are not within the class mentioned, to which we cite the following authorities which are conclusive.

This doctrine is illustrated in the case of *R. R. Co.* v. *Crawford,* 55 So. 596, 99 Miss. 697; *Grenada Lumber Co.* v. *State of Mass.,* 48 So. 1021; *Ex parte Young,* 209 U. S. 123, 52 L. Ed. 174; *Y. & M. V. R. R. Co.* v. *JacksonVinegar Co.,* 57 L. Ed. 193; *R. R. Co.* v. *Brandon,* 98 Miss. 461; *R. R. Co.* v. *Winn,* from the supreme court of Arkansas; *New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152, 41 L. Ed. 415, 27 Sup. Ct. Rep. 188, 9 Ann. Cas. 736; *Lee* v. *N. K.,* 207 U. S. 67, 52 Law Ed. 106, 28 Sup. Ct. Rep. 22; *So. R. Co.* v. *King,* 217 U. S. 524, 54 L. Ed. 868, 30 Sup. Ct. Rep. 594; *Collins* v. *Tex,* 223 U. S. 288, 56 L. Ed. 439, 32 Sup. Ct. Rep. 286; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 240, 56 L. Ed. 1197, 32 Sup. Ct. Rep. 784; *Quin* v. *State of Miss.,* 82 Miss. 76.

No proposition is better settled in the jurisprudence of this country, than that it is unnecessary, prior to filing suit against the stockholders in the bank to exhaust the assets under statutes similar to ours. In the first place an examination of the statute shows no such condition. The statute says that the stockholders shall be individually liable for the benefit of depositors, and provides in whose name the suit shall be brought. The statute does not say that the stockholders shall be liable after the exhaustion of assets, and to adopt the construction contended for by counsel of the appellants would be to write into the statute something that the legislature has not written there.

It might be well at this point to direct the attention of the court to the language of Mr. Justice STEVENS, in the case of *Anderson* v. *Wilbourn,* 74 So. 682; *Davis* v. *Moore,* 197 S. W. 295; 3 R. C. L. subject, Banks, paragraph 42; 7 C. J., page 14; *Bird* v. *Calvert,* 22 S. C. 297; Thomp., Liab. Stock., paragraphs 34, 292, 321; *Johnson* v. *S. W. R. R. Bank,* 3 Strob. Eq. 273; *Terry* v. *Martin,* 10 S. C. 263; *Sullivan Mfg. Co.,* 14 Id. 494, and 20 S. C. 79; *Bank* v. *Bivingsville Cotton Mfg. Co.,* 10 Rich. 100; Georgia Case of *Lamar, Executor, et al.* v. *Taylor et al., Receivers,* 141 Ga. 227, 80 S. 1085; *Davidson* v. *Rankin,* 34 Cal. 505; *Mokelumne Hall Canal Company* v. *Woodbury,* 14 Cal. 265; *Morrow* v. *Superior Court,* 64 Cal. 383; *Mokelumne Hall, etc.,* v. *Woodbury,* 110 Cal. 265; *Prince* v. *Lynch,* 38 Cal. 528; *Sonoma Valley Bank* v. *Hill,* 59 Cal. 107; *Young* v. *Rosenbaum,* 39 Cal. 654; *Paine* v. *Stewart,* 33 Conn. 530; *Gibbs* v. *Davis,* 8 So. 633; *Lamar, Executor, et al.* v. *Taylor et al., Receivers,* 141 Ga. 227., 80 S. E. 1085; *Fuller* v. *Ledden,* 87 Ill. 310; *Culver* v. *Third National Bank,* 64 Ill. 530; *Corning* v. *McCulloch,* 1 Comstack, 47; *Allen* v. *Sewell,* 2 Wend. 327; *Aspinwall* v. *Succhi,* 57 N. Y. 331; *Heager* v. *McCullouch,* 2 Denio. 123, and *Coleman* v. *White,* 14 Wis. 701; *Parmelee* v. *Prince,* 208 Ill. 544; *Low* v. *Buchanan,* 94 Ill. 76; *Moore* v. *U. S., etc., Co.,* 87 N. E. 536, 239 Ill. 544; *Calder* v. *Calder Co.,* 160 Ill. App. 620; *Queenan* v. *Palmer,* 117 Ill. 62; *Schalucky* v. *Field,* 124 Ill. 617; *State* v. *Union Stock Yards State Bank,* 103 Iowa, 549., 70 N. W. 752., 72. N. W. 1076; *Sleeper* v. *Norris,* 59 Kan. 555., 53 Pac. 757; *Harrison* v. *Remington Paper Co.,* 140 Fed. (Kan.) 385, 72 C. C. A. 405., 3 L. R. A. (N. S.) 954; *Foster* v. *Row,* 77 Am. St. Rep. 565., 120 Mich. 1, 79 N. W. 696; 6 Detroit Leg. N. 229; *Perkins* v. *Sanders,* 59 Miss. 741; *Selma and Marion Railroad Company* v. *Anderson,* 51 Miss, 829; *Flynn* v. *American Banking & Trust Co., et al.,* 104 Me. 141, 69 Am. So. Rep. 771, 129 Am. St. Rep. 378; 19 L. R. A. (N. S.) 428; *American Spirits Mfg. Co.* v. *Elridge,* 209 Mass. 590., 95 N. E. 942, *Marcy* v. *Clark,* 17 Mass. 330;

*Patterson* v. *Stewart,* 41 Minn. 94, 42 N. W. 926., 16 Am. St. Rep. 671; *Paterson,* v. *Minn. Mfg. Co., et al.,* 4 L. R. A. 745; *State Sav. Ass'n* v. *Kellogg,* 63 Mo. 540; *Bitlner* v. *Lee,* 25 Mo. App. 559; *Schneider* v. *Johnson,* 147 S. W. 539; *Smathers* v. *Bank,* 135 N. C. 410, 47 S. E. (1904) 893; *Man* v. *Boyken,* 79 S. Car; *Brinkworth, et al.,* v. *Hazelett, Receiver,* 64 Neb. 492, 90 N. W. 537; *Covell* v. *Fowler,* 144 Fed. 535; *Davidson* v. *Gretna State Bank,* 59 Neb. 63; *Van Tuyl* v. *Sullivan,* 156 N. Y. S. 310; *Mahorney* v. *Berhhardt,* 63 N. Y. S. 642, affirmed 169 N. Y. 589, 62 N. E. 1097; *Walton* v. *Coe,* 110 N. Y. 109, 17 N. E. 676; *Corning* v. *McCollough,* 1 N. Y. 47; *Ford* v. *Chase,* 103 N. Y. S. 30; *Moss* v. *Averell,* 10 N. 449; *Shipman, etc., Co.* v. *Portland Const. Co.,* 128 Pac. 980; *Garetson Lbr. Co.* v. *Hinson,* 69 Ore. 605; 140 Pac. 633; *Craig's Appeal,* 92 Pa. St. 396; *Aultman's Appeal,* 98 Pa. St. 505; *Bank of Desoto* v. *Reed,* 109 S. W. (Tex.) 260; *Jackson* v. *Meek,* 87 Tenn. 96., 9 S. W. 225; 10 Am. St. Rep. 620; *McLaughlin et al.* v. *O'Neil,* 51 Pac. 243, 7 Wyo. 187; *Booth* v. *Dear,* 71 N. W. 816, 96 Wis. 516; *Coleman* v. *White,* 14 Wis. 700; *Cleveland* v. *Marine Bank,* 17 Wis. 545; *Merchants Bank* v. *Chandler,* 19 Wis. 434; *Terry* v. *Chandler,* 23 Wis. 456.

We respectfully submit that the decree of the chancellor should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The Bank of Newton was incorporated under the laws of the state of Mississippi in 1898, with a capital stock of fifty thousand dollars. In 1910 it procured a charter amendment under the laws of the state, increasing its capital stock to seventy-five thousand dollars. In 1914 the state of Mississippi passed an act regulating and guaranteeing the deposits of the banks to depositors whose claims were secured, and in the said act (chapter 124, Laws of 1914) it was provided in section 59 that the stockholders of banks shall be liable, in addition to their stock, to the amount of the par value of the stock held by such

stockholder. After the passage of this act the Bank of
Newton was examined by one of the bank examiners pro-
vided for in said law, who reported the bank to be solvent
and in good condition. Thereupon the stockholders of
the bank passed a resolution authorizing and directing
the directors to take the necessary steps to come under
the guaranty features of the Banking Act referred to.
The provisions were complied with, and in January, 1915,
the said bank became a guaranteed bank, with the approv-
al of the bank examiners, and continued to do business
until February, 1916, when one of the bank examiners
found the bank to be insolvent, and proceeded to liqui-
date the bank according to the provisions of the act.

The bill of complaint set out the names of the stock-
holders of the bank and the amounts of stock held by
each, and also set out the resolutions of the directors
and stockholders adopting and electing to come under
the Banking Act referred to. It is alleged that the
assets of the bank would not pay the depositors,
and that, after applying all the assets, there would
be left a balance due the depositors in excess of
the amount of capital stock. It is alleged that all
the deposits were contracted subsequent to the passage
of the Banking Act and subsequent to the resolu-
tion of the stockholders to become a guaranteed bank
and to take the benefits of the Banking Act. It was also
alleged in the bill that the bank was liquidated under the
direction of the chancery court of Newton county, and
that the chancellor of that district had directed the bring-
ing of the suits against the stockholders, under section 59
of the act. Also, the bill alleged that, while the bank
was examined by the bank examiner and reported by him
to be in good condition, in fact the assets of the bank were
not equal to its liabilities when the Banking Act was
passed, and also when the bank became a guaranteed bank
under the provisions of the resolution of the stockholders
and the statute applicable in such cases. It appears from
the allegations of the bill that all the assets of the bank

had not been exhausted, but it was alleged that the assets left would not pay the depositors, and there would be a difference, after exhausting the assets at a fair value, of more than the capital stock of the bank due the depositors. After the bank examiner took charge of the bank under the provisions of the act, it is alleged, the directors appointed a representative upon whom process might be served, and also granted authority to the liquidator of the bank to sell the real estate and other property in the administration and liquidation of the bank. It appears in the allegations of the bill that some of the stockholders had recognized their liability and had paid to the liquidators of the bank the amount equal to the par value of their stock and had been settled with.

The defendants demurred to the bill of complaint on several grounds, viz: that there was no equity on the face of the bill; that the bill did not charge that the bank was solvent at the time of the approval of the act of 1914 by the Governor, nor at any time thereafter; that the bill admits that the bank was insolvent at the time of the approval of the act of 1914; that the bank was incorporated under the laws of the state prior to the passage and approval of chapter 124 of the Laws of 1914, and that the bank had not since amended its charter, and that all the capital stock was subscribed for and paid in prior to the passage of said act; that the charter of the bank constituted a contract which could not be impaired without the consent of the stockholders so as to impose personal liability on the stockholders, and that to do so would be to do an injustice to the stockholders, because of section 178 of the Mississippi Constitution of 1890, providing that charters of private corporations may be repealed or amended, " provided that no injustice be done to the stockholders;" that the bill shows that the assets had not been exhausted, and that suit for the personal liability of the stockholders could not be brought until the assets had been first exhausted. The chancellor overruled the de-

murrer and granted an appeal to settle the principles of the case.

This demurrer presents two questions for decision: First, was the suit prematurely brought? and, second, can the liability imposed by section 59 of the Banking Act be imposed upon stockholders of corporations already incorporated at the time of the passage of the act? Section 59 of chapter 124 of the Laws of 1914 is as follows:

"Liability of Stockholders. The stockholders of every bank shall be individually liable, actually and ratably, and not for one another, for the benefit of the depositors in said bank to the amount of their stock at the par value thereof, in addition to the said stock; but persons holding stock as executors, administrators, guardians, or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living or competent to act; and the person pledging such stock shall be deemed the stockholder and liable under this section. Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank."

The first question presented for decision turns upon the further question of whether this liability is a primary or secondary one. A careful reading of the whole act convinces us that it is a primary liability.

The purpose of the act, that is to say, its leading and controlling purpose, is to make the claims of depositors safe, and to provide for their payment as promptly as is consistent with justice to the bank and to its stockholders. The concluding sentence of section 59, providing for the enforcement of this liability says:

"Such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by

any receiver, or other officer succeeding to the legal rights of said bank.''

This is the only provision we have noted that provides the time of the bringing of the suit, and that is, while the bank is in process of liquidation. There is no requirement to await a collection and application of the debts and property of the bank before bringing this suit against the stockholders. In many cases it would require a considerable period of time to collect the debts and dispose of all the personal and real estate belonging to a bank, even though it might be perfectly manifest that when this is done there would still be a large deficit due to the depositors. If the bank or its liquidators were required to await until the debts had been collected and the assets converted into cash, many of the stockholders might escape liability by becoming insolvent or moving out of the jurisdiction of the court. When the stockholders pay this liability into the bank and it is applied to the satisfaction of the depositors' claims, and after the debts of the bank are paid, if there were any funds left the stockholder would naturally secure this remainder as a stockholder of the bank; and, of course, a stockholder who had paid the liability would first be repaid before any stockholder who had not paid such liability would be entitled to any dividend from the proceeds of the bank. We therefore think that the suit can be maintained whenever it is reasonably apparent that the assets of the bank will not pay the depositors.

As to the second proposition: The bank was chartered under the general laws of the state at a time when the Constitution expressly provided that all such charters could be repealed or amended by the legislature whenever in the judgment of the legislature it was for the public interest to do so, provided no injustice be done to the stockholders. It is not necessary in this suit to define what might or might not constitute an injustice to the stockholders, nor, whether this provision of the Constitu-

tion presents a legislative or a judicial question. It certainly could not be said that an injustice was done to the stockholders under an amendment whereby the corporation, after such amendment, could do business under more favorable terms than a person or a partnership could do. Under the present banking law, even with a stockholder's liability equal to the par value of the stock, the stockholders of a corporation have the advantage of an individual doing such business. An individual, or a partnership, doing a banking business would be under a liability, not only equal to the capital of the bank, but an unlimited liability upon each person in the partnership doing such business, which liability could be kept alive and in force all the time during the life of such person and against his estate in case of death. It is well settled by the authorities that the legislature may impose reasonable conditions upon the rights of either individuals or corporations as to their future contracts.

We think the liability of the stockholder, as to a deposit, accrues with the making of the deposit, and not of the date of granting a charter to do business. At the time the charter of the Bank of Newton was granted, the general law provided that the liability of a stockholder extended only to the amount of his stock, except where otherwise provided by statute. Sections, 909, 922, 924, Code of 1906, sections 4081, 4096, 4097, and 4098, respectively, Hemingway's Code. A different question would be presented if a deposit made prior to the passage of the banking law was sought to be imposed as a liability upon the stockholder in excess of his stock. In the case of *Bank of Oxford* v. *Love*, 111 Miss. 699, 72 So. 133, the general features of the Banking Act were upheld by this court.

The United States Supreme Court has specifically upheld the power of a legislature, in cases of this kind, to change the liability of stockholders with reference to future contracts, even against charter stipulations, where the power to amend or repeal was reserved.

*Sherman* v. *Smith,* 1 Black, 589, 17 L. Ed. 173. In that case the articles in the charter of the New York Banking Association declare:

"The shareholders of this association shall not be liable in their individual capacity on any contract, debt or engagement of the association."

A section of the Banking Act of New York reserved to the legislature the power to alter or repeal the act, and the court held that by necessary construction this provision reserved the power to alter or repeal all or any one of these terms and conditions or rules prescribed by the act. In 3 R. C. L., tit. " Banks," par. 26, p. 397, the following language is used:

"Where the power to alter or amend a charter of a banking corporation is reserved to the legislature, it may change the law in regard to liability of stockholders without violating the provision of the federal Constitution forbidding the impairment of the obligation of contracts. The constitutional provision that the legislature shall grant no charter for banking purposes except upon condition that the stockholders shall be liable for the debts of the bank to the extent of their stock does not preclude the legislature from imposing a greater liability."

See also, 10 Cyc. 699.

There are many decisions of the several states to the same effect, all holding that, as to future contracts, the legislature may impose additional liability whenever there is a reservation of power in the charter to alter, repeal, or amend the same. In the present case, however the stockholders of the bank expressly authorized and directed the directors to take the necessary steps to come under and secure the benefits of the banking act. This was one, and the bank examiners gave the bank a certificate of guaranty, certifying that the depositors' deposits would be guaranteed by the state under the Banking Act. All this was done by the stockholders

and directors before the time provided in the act in which it would be necessary for a bank to qualify, according to the act, to do a banking business. Under this arrangement, the bill alleges, the bank received all its deposits involved in this suit, and the depositors had a right to assume that their deposits would be guaranteed, not only by the bank and the state banking funds, but also by the security afforded by the stockholders' liability under the terms of the act; and the stockholders, having held out this inducement, in order to secure the deposits, are in a poor position to now claim exemption from the effect of what they voluntarily did.

We are of opinion that section 59 imposes the liability upon the stockholders of banks whether incorporated before or after the Banking Act was passed, but that this liability does not extend to deposits which were actually made before the passage of the act. As to deposits made prior to the passage of the act, the stockholders' liability will be measured by the law in force at the time of the making of the deposits which constitutes the contract between the bank and the depositor.

The judgment of the chancellor is affirmed, and the cause is remanded.

*Affirmed and remanded.*