BANK OF OXFORD v. LOVE *et al.*

[72 South. 133.]

1. BANKS AND BANKING. *Inspection. Police Power. Statutes.*

The Banking Act of 1914, chapter 124, providing for the examination of banks and their liquidation in case of insolvency, or if they shall be doing business on less than the minimum capital allowed, is a valid exercise of the police power and applies to a bank chartered by prior special act declaring that its business shall be confided to and controlled by the stockholders under such rules of law and requirements as the company may see fit to adopt, provided the same be not in conflict with the state and federal constitutions, for, by chartering the bank, the legislature could not waive its right to exercise the police power.

2. SAME.

    The police power is a governmental function and neither the
state legislature, nor any inferior legislative body to which a
portion of such power has been granted, can alienate, surrender
or abridge the right to exercise such power by any grant, con-
tract, or delegation whatsoever.

APPEAL from the chancery court of Hinds county.
HON. O. B. TAYLOR, Chancellor.

Bill by Bank of Oxford against J. S. Love and other
state bank examiners. From a decree dismissing the
bill, complainants appeal.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

*Geo. H. Ethridge,* Assitant Attorney-General, for
appellees.

HOLDEN, J., delivered the opinion of the court.

The appellant, Bank of Oxford, filed its bill in the
chancery court of Lafayette county, seeking to enjoin
the state bank examiners, J. S. Love et al., appellees,
from interfering, under the state banking, law enacted
in 1914, with its stockholders and directors in the ad-
ministration of its internal affairs, and to recover the
money paid by it under protest under the state banking
law for the support of the said bank examiners. From
a decree denying the relief sought by the Bank of
Oxford, it appeals here.

Briefly stated, the allegations of the bill are that
the Bank of Oxford was organized under and incorpora-
ted by a special act of the Mississippi legislature ap-
proved in March, 1872; that said incorporating act was
promptly accepted by appellant, the requisite amount of
capital stock paid in, and that the corporation duly
organized and commenced its banking business under
such charter, and has conducted its business as such
continuously from the date of its organization up to
the date of the filing of this bill; that, in and by said

charter, it was provided, amongst other things, that the bank shall have the right and exercise the privileges appertaining to a general banking, exchange, and brokerage business, with all the powers of a body corporate; that section 4 of said bank charter provides:

"That the business of said bank shall be confided to and controlled by its stockholders under such rules of laws and regulations as said company may see fit to adopt, provided that the same be not in conflict with the Constitution of the United States or of this state."

The bill then sets forth the enactment by the Mississippi legislature on the 9th day of March, 1914, of the act establishing a banking department, and that by section 10 of such act, it is provided that the bank examiners thereby created should examine twice a year, and oftener if necessary, at irregular intervals and without prior notice, the banks organized under the laws of the state; that section 11 of said act provides that at such examinations the examiners should have the power and duty to examine the cash, bills, collaterals, securities, books of account, the condition of affairs at the bank, the mode of conducting and managing the affairs of the bank, the actions of its directors, and the investment of the funds of the bank; that section 21 of said act provides that if any bank examiner should from any such examination be of opinion that any bank is insolvent, or that its condition is such that a further continuance of its business is hazardous to its creditors, depositors, or the public, or that the bank has failed to comply with any rules or instructions provided by law, he should forthwith call a meeting of the board of examiners and report the facts to such meeting; that section 20 of said act provides that if the said board should find any bank is attempting to do business with less than the minimum capital required by law, or without having its full capital stock paid in, or that any bank is insolvent, or that any bank has for any reason failed, it shall be the duty of the board of

examiners forthwith to liquidate the said bank as pro-
vided in such statute; that such board should proceed
to liquidate the business if the bank has made a pay-
ment of dividends contrary to law, or made any charges
against the surplus account contrary to law, or suffered
its capital to remain impaired after a thirty days' no-
tice, or allowed its reserve fund to remain below the
minimum after thirty days' notice, or for persistent
violation of any other provisions of the law. The bill
then sets up the guaranty clause of the United States
Constitution (article 1, section 10), and alleges that be-
cause of such charter and such constitutional provision
the state legislature had no power to subject the affairs
of the appellant bank to the inspection, examination,
decision, and control of said board of examiners, or to
give the board of examiners any power in connection
with or over the management of the bank's affairs, or
to order or superintend any liquidation thereof. The
bill then sets forth that the bank examiners, J. S.
Love et al., appellees, were threatening to interfere
with the affairs of said bank and to exercise the power
provided for by said act of the state legislature, apply-
ing the same to said bank; and it invoked its immu-
nity and exemption from such supervision and control
under said contract clause of the Constitution of the
United States. The prayer of the bill asks for an in-
junction against the bank examiners from interfering
with its affairs, and also for a return of the tax so paid
by it under such protest. To this bill bank examiner
J. S. Love, et al., demurred; which demurrer was
sustained by the chancellor, and the bill was dismissed.

The question presented to us here for decision is
whether or not the Bank of Oxford, holding a legisla-
tive charter of date March ——, 1872, which provides,
"that the business of said bank shall be confided to and
controlled by its stockholders under such rules of laws
and regulations as said company may see fit to adopt,
provided that the same be not in conflict with the Con-

stitution of the United States or of this State," is exempt from the operation of the state banking law enacted by the legislature in 1914; in other words, whether or not said bank, by its charter, is immune from the supervision and regulation provided for by the said Act of 1914. It will be observed that the appellant bank does not contend that the supervision and regulation of state banks imposed by said Act of 1914 is unreasonable, but appellant's contention here is based solely upon the ground that the act of the legislature of 1914 is not to be applied to it, as this would be an impairment of its charter rights of contract with the state, and therefore violative of its constitutional right of contract under the guaranty clause of the federal Constitution (article 1, section 10), that on account of the contract with the state as evidenced by its charter granted in 1872, the legislature now has no power to subject the affairs of the bank to the rules and regulations as provided in the said banking law of 1914.

It is not clear to us that the operation of the state banking Act of 1914 conflicts with or interfers with the substantial rights of the appellant bank under its charter. The law undertakes to reasonably supervise and regulate the affairs of the bank with reference to its solvency and safety as to the public use, and public welfare; but we will concede, for the purposes of the discussion, that the Act of 1914 contravenes and interfers with the charter rights of the appellant bank, as granted to it by the legislature in 1872, in the management of its internal affairs. This raises the question of whether or not such rights of exemption, as claimed by the appellant bank under its charter, could be lawfully granted to it by an act of the legislature of 1872. In other words, did the legislature have the power and authority to grant to the appellant bank, through its charter, immunity and exemption from any reasonable regulations that might thereafter be imposed by the state under its inherent police power? We think not.

It is contended by counsel for appellant that this kind of legislative contract cannot be restricted or controlled by the police power of the state, but that the police power extends only to matters affecting the public health or the public morals; but we think the authorities have settled the law contrary to the contention of counsel for appellant.

"The police power in its broadest acceptation means the general power of a government to preserve and promote the public welfare by prohibiting all things hurtful to the comfort, safety, and welfare of society, and establishing such rules and regulations for the conduct of all persons and the use and management of all property as may be conducive to the public interest." 22 Am. & Eng. Enc. Law, 916.

"The police power is a governmental function, and neither the state legislature, nor any inferior legislative body to which a portion of such power has been granted, can alienate, surrender, or abridge the right to exercise such power by any grant, contract, or delegation whatsoever." 22 Am. & Eng. Enc. Law, 921.

"The nature of the business done by banks in dealing with money, receiving deposits for safe-keeping, discounting paper, and loaning money, is such and is so affected with the public interest as to justify reasonable regulation for the protection of the people. The confidential and trust relations which exist between the bank and its patrons, and the difficulty which depositors and those dealing with the bank necessarily encounter in detecting irregular practices and in ascertaining the real financial condition of banks, are sufficient to justify police control and inspection." 22 Am. & Eng. Enc. Law, 933.

It seems to be settled by the United States supreme court that the banking business is affected with a public use, and that it is within the power of the legislature to enact laws under their police power regulating the banking business. *Noble State Bank* v. *Haskell,* 219 U.

S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487; *Shallenberger et al.* v. *First State Bank of Holstein,* 219 U. S. 114, 31 Sup. Ct. 189, 55 L. Ed. 117. The rights and powers granted to the appellant bank in its charter from the legislature in 1872 are only such powers as might be exercised by an individual, subject to the regulation, and control of the legislature; and the legislature had no authority to surrender this power of control and regulation in the interest of the public welfare.

"No legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police." *Stone* v. *State of Mississippi* 101 U. S. 814, 25 L. Ed. 1079 (headnote).

"The police power of a state extends to the regulation of the banking business, and even to its prohibition except on such conditions as the state may prescribe." *Noble State Bank* v. *Haskell, supra,* (headnote).

Thus, in paragraph 3 of the headnotes of the last above-cited case, it was held that the enactment of the banking law, similar to the one in Mississippi, was within the police power of the state, and did not infringe the obligations of a charter contract. On page 111 of 219 U. S., on page 188 of 31 Sup. Ct., on page 116 of 55 L. Ed. (32 L. R. A. [N. S.] 1062, Ann. Cas. 1912A, 487), the court, in speaking of the police power, said:

"It may be said in a general way that the police power extends to all the great public needs. *Camfield* v. *United States,* 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. Among matters of that sort probably a few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of success-

ful commerce. One of those conditions at the present time is the possibility of payment by checks drawn against bank deposits, to such an extent do checks replace currency in daily business. If, then, the legislature of the state thinks that the public welfare requires the measure under consideration, analogy and principle are in favor of the power to enact it.''

The same conclusion was reached in *Shallenberger et al* v. *First State Bank, supra,* involving the constitutionality of a Nebraska statute; and the constitutionality of the law was upheld, also, in the case of *Assaria State Bank* v. *Dolley,* 219 U. S. 121, 31 Sup. Ct. 189, 55 L. Ed. 123. In the case of *Boston Beer Co.* v. *Commonwealth* of Massachusetts, 97 U. S. 25, 24 L. Ed. 989, the court, in discussing charter rights and the contract clause of the Federal Constitution, says:

''Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals. The legislature cannot, by any contract, divest itself of the power to provide for these objects. They belong emphatically to that class of objects which demand the application of the maxim, *'Salus populi superma lex';* and they are to be attained and provided for by such appropriate means as the legislative discretion may devise. That discretion can no more be bargained away than the power itself. *Boyd* v. *Alabama* [94 U. S. 645, 24 L. Ed. 302].''

In the case of *Stone et al., Railroad Com'rs* v. *Y. & M. V. R. Co.,* 62 Miss. 607, 52 Am. Rep. 193, it is said in the third paragraph of the head notes:

''A grant to a railroad company, in general terms, of authority to fix its rates of compensation, is not a renunciation of legislative power to secure reasonable rates. Every presumption is against such renunciation.

But where it is clear that the legislature intended to partially renounce such control by conferring upon the company the right to fix its rates within limits, the fixing of such limits, in the charter, is a specification of what will be a reasonable exercise of the authority conferred, and is to that extent a renunciation of the state's control.''

Therefore, following the sound and safe conclusions reached in the foregoing authorities, we find the law to be that the police power of the state extends to the regulation of the banking business, and it cannot be surrendered by the legislature. And we hold that the appellant, Bank of Oxford, conducting a banking business, is affected with a public use; that the Act of 1914, reasonably regulating the conduct and affairs of banks, is within the police power of the state, and is valid; and that the rights and powers granted to the appellant bank by the legislature of 1872 are null and void, in so far as they conflict with the operation of the banking law of 1914, for the reason that the Legislature had no authority to renounce the state's control over the conduct and business of the appellant bank, under its police power.

The banking Act of 1914 was designed and enacted primarily for the purpose of regulating the affairs and duties of the banks toward the public, and to prevent injury and losses on account of negligence or fraud. The banking business is one in which the public may be easily injured and defrauded, and a law for the supervision and regulation of the business by the state is a wholesome piece of legislation. The Act of 1914 imposes reasonable regulations, and only such restraints as make for sound banking business and a protection of the public welfare.

In view of these conclusions, we are clearly of the opinion that the judgment of the lower court should be affirmed.

*Affirmed.*