PLANTERS BANK *v.* J. ESKIND & SONS.

(Division A.    March 3, 1924.)

[99 So. 148.    No. 23951.]

1. BANKS AND BANKING. *Law prohibiting lien on stock of stockholder to secure debts due bank held valid.*

Section 3606, Hemingway's Code, has the effect of prohibiting any lien upon the stock of a stockholder to secure debts due by him to the bank, except where the lien is taken or purchase made to prevent the loss of a previous debt, and is a valid legislative regulation of banks.

2. PLEDGES. *Bank cannot acquire lien on stock of stockholder to defeat lien of assignee.*

No lien upon the stock of a stockholder can be acquired by the bank by a provision of its charter, or otherwise by contract, to defeat the prior lien of an assignee of the stock.

APPEAL from chancery court of Leflore county.

HON. C. L. LOMAX, Chancellor.

Proceeding between the Planters Bank and J. Eskind & Sons. From the judgment rendered, the former appeals. Affirmed.

*Pollard & Hamner,* for appellant.

The contention of the appellant is that the charter pro-

vision in section 9 of the charter gives it a lien on the Youngblood stock in controversy. We submit that the charter provision is a contract between the state of Mississippi and the Planters Bank, on which the bank had a right to rely and ''it is beyond the power of the state to repeal or materially annul such a corporate charter unless the power of amendment and repeal has been expressly reserved by the state, or unless all the parties to the contract consent to the change.'' 2 Cook on Corporations, section 494.

''The state cannot materially amend the charter ex-- cept by the unanimous consent of the stockholders unless the power of amendment is especially reversed by the state at the time of granting the charter.'' 2 Cook on Corporation, sections 495-496.

It is not contended that the stockholders of the Planters Bank, in the instant case, ever consented to any change, and the charter provision was incorporated in the charter at the time of its approval by the state in 1905, whereas the statute, section 3606, Hemingway's Code of 1917, was not effective until March 9, 1914, and this statute could not, under the above citations, alter the lien which the bank had on its own stock for a debt of a stockholder holding the stock. *Peoples Bank* v. *Exchange Bank,* 94 A. S. R. 144. A similar case to this, and very much in point and upholding a bank's lien on its stock, is *Morris* v. *Westerman,* 3 A. L. R. 1237.

*Osborn & Witty,* for appellees.

We respectfully ask for an affirmance, mainly under section 3606 of Hemingway's Code. Appellant relies solely on the contention that the bank's charter, by the paragraph set forth in the agreed statement of facts, specifically gave to the bank a lien upon its shares of stock for any debt owing to the bank by the owner of such shares; that this charter was granted to the bank

in 1905, whereas the statute became effective in 1914, and appellant takes the position that the bank cannot be affected by this statute, on the theory that that would violate charter rights. In support of this contention, appellant cites only Cook on Corporations, and the sections quoted by appellant merely lay down the broad general rule, which is elementary, that ordinarily it is beyond the power of the legislature to repeal or annul a corporate charter, unless the state has reserved that right, or the stockholders consent. That is, of course, the general rule, which is subject to some very important exceptions, one of which is that the legislature cannot release its right to regulate corporations in the exercise of the police power.

Appellant's contention is very remarkable in the light of the comparatively recent decision of this court in the case of *Bank of Oxford* v. *Love,* 111 Miss. 699, 72 So. 133, affirmed by the United States supreme court in 63 L. Ed. 1165. In that case this court, in its opinion by HOLDEN, J., expressly upholds the validity of the banking law of 1914, on the ground that it was a valid exercise of the police power.

In the instant case the facts are much stronger for the appellee than they were in the Bank of Oxford case. Similar statutes have been frequently construed by the United States supreme court, and by the courts of other states, which have uniformly held that in view of the fact that the statute forbids an express contract between the bank and the stockholder, whereby the bank is given a lien on the stock, then certainly it would be an absurdity to argue that in the teeth of the statute, the bank could enjoy an implied or equitable lien by virtue of a charter or by-law whose provisions are contrary to the plain provisions of the statute. *Bank* v. *Bank,* 8 Am. St. Rep. 643, (Minn.) The leading case: *Bank* v. *Lanier,* 20 L. Ed. 172, 11 Wall. 369. We also refer the court to the following: *Bullard* v. *Bank,* 21 L. Ed. 923, 18 Wall. 589; *Insurance Company* v. *Bank,* 48 L. R. A. 108,

162 N. Y. 163; *Bank* v. *Haskell*, 219 U. S. 104, 55 L. Ed. ——, 31 Sup. Ct. Rep. 186, 32 L. R. A. (N. S.) 1062, wherein the United States supreme court upheld the validity of the Oklahoma banking law, which is almost identical with ours; 14 C. J. 788.

Appellees being innocent purchasers for value of the certificate, taking the same not only to secure a pre-existing debt, but to secure the payment for goods thereafter to be sold to Youngblood, had no notice by the face of the certificate that the bank claimed a lien, and are therefore entitled to protection as innocent purchasers. *Hardy* v. *Boyer,* 7 Ga. App. 472, 66 S. E. 205; 14 C. J. 795; 7 C. J. 500.

HOLDEN, J., delivered the opinion of the court.

This is a chancery suit between appellees, J. Eskind & Sons, and the Planters' Bank, to determine the question as to which one of them has the superior lien upon a certificate for ten shares of bank stock, which was issued by appellant to Youngblood, a stockholder, who assigned the certificate to appellees to secure a debt due them; the bank claiming a lien upon the certificate by virtue of a provision of its charter providing there shall be a lien in favor of the bank upon the stock of each stockholder to secure the payment of any indebtedness of such stockholder to the bank, and that the certificate shall not be transferred until all such indebtedness has been paid the bank by the stockholder.

At the time the certificate was assigned by Youngblood to appellees, Youngblood was indebted to the bank. The assignment by Youngblood to appellees was accompanied by delivery of the certificate, and appellees had no notice of any lien on the certificate in favor of the bank, except constructive notice from the recording of the bank's charter. The chancellor decreed that the lien of appellees was paramount to that of the bank, and awarded the certificate to appellees, to be sold and ap-

plied on the payment of the debt due to them by Young-
blood. From this decree the bank appeals.

We here set out the agreed statement of facts in the
record:

"Complainants, J. Eskind & Sons, filed their suit in
the chancery court of Leflore county against the Plant-
ers' Bank, of Schlater, Miss., and S. I. Gensburger, trus-
tee of the estate of B. C. Youngblood, bankrupt, A de-
cree *pro confesso* was taken against said trustee, who
claims no interest in this controversy.

"The defendant, Planters' Bank, filed an answer and
cross-bill to complainants' bill, and complainants an-
swered the cross-bill, and issue having been joined, the
following facts, being undisputed from the pleadings and
proof, were before the chancellor in rendering his final
decree, and are the facts agreed upon to be submitted to
the supreme court on appeal:

"In 1905, Planters' Bank was incorporated as a bank-
ing corporation under the laws of the state of Missis-
sippi, domiciled at Schlater, Miss., and having the fol-
lowing provision in its charter: '(9) There shall be a
lien in favor of said corporation upon the corporate
stock of each stockholder to secure the payment of any
and all indebtedness of such stockholder without regard
to time when same was contracted or when due and
no such stock shall be transferred until all indebtedness
of such stockholder to said corporation shall have been
paid in full. Said lien may be waived at any time by
written indorsement signed by the president, vice presi-
dent, or cashier of said corporation.' The charter was
recorded in Leflore county October 23, 1905.

"Thereafter, in 1918, fifteen thousand dollars addi-
tional stock was issued by the bank, among which was
the certificate for ten shares of stock, which is involved
in this litigation, which was sold and issued to B. C.
Youngblood in 1918. The certificate of stock contains
no provision whatever reserving to the bank any lien
upon the certificate for any indebtedness due or to be-

come due to the bank by the holder of the certificate, and
the certificate issued under the above charter, which
has never been amended, unless by law.

"At the time of the issuance of this certificate to Young-
blood, manual possession of the certificate was delivered
to Youngblood, and he kept same continuously in his pos-
session until it was delivered by him to complainant, J.
Eskind & Sons, as hereinafter stated. At the time the cer-
tificate was issued to Youngblood, Mr. Thayer, the cash-
ier and active managing officer of the bank, stated to
Youngblood that he (Youngblood) could not borrow any
money from the bank with the stock as collateral with
the bank, as that was forbidden by law, or words to that
effect.

"On August 5, 1920, Youngblood was indebted to com-
plainants, who are wholesale merchants, and in consid-
eration of the agreement by complainants to extend the
time for the payment of this indebtedness until August
5, 1921, and in order to secure merchandise to be sold
by complainant to Youngblood in the future, Youngblood
transferred and assigned the certificate to complainants
on August 5, 1920, as collateral security for his said debt
to complainants, which was thereupon evidenced by a
note executed on August 5, 1920, by Youngblood to com-
plainants, this note being due and payable August 5,
1921.

"The note provides that the certificate is pledged to
secure the note, and complainants, by the terms of the
note, are given a lien upon the certificate not only for the
payment of the note but also for such further advances as
may thereafter be made by complainants to Youngblood.
Thereafter complainants, in pursuance of this agree-
ment, during the fall of 1920, sold and delivered to Young-
blood merchandise to the amount of six hundred seventy-
nine dollars and forty-four cents. During the years 1919
and 1920, and up until February 10, 1921, Youngblood
was indebted to the Planters' Bank in the sum of one
thousand two hundred forty-six dollars for a loan made

in the fall of 1919, and on February 10, 1921, all his indebtedness to said bank amounted to four thousand one hundred ninety dollars and ninety-one cents, for which amount Youngblood on February 10, 1921, gave his note to said bank, payable January 1, 1922.

"This note provides on its face that it is collaterally secured by certain notes from Pentecost & Eubanks to Youngblood, of the total face amount of six thousand dollars and makes no reference whatever to its being secured by any lien on said certificate of stock. The Eubanks and Pentecost notes were thought by the bank to be worth their face value when attached as collateral to the Youngblood note to the bank, but they have since proven worthless, Pentecost having gone into bankruptcy.

"All during the years 1919 and 1920, and on August 5, 1920, and at the time when said note dated February 10, 1921, was executed by Youngblood, the bank, through its proper officers, considered Youngblood entirely solvent and considered his indebtedness to the bank entirely sound and secure without the security of the certificate of stock, and did not make any request of Youngblood to put up as collateral security his certificate of stock, and at that time the bank was relying on Youngblood's personal reliability and the collateral mentioned in the face of the note from Youngblood to the bank, the same being the Pentecost and Eubanks notes, although said bank never expressly waived such lien unless it did so by reason of the facts herein stated. But all during this time the bank made no attempt to enforce any lien upon the stock, or to obtain possession of the certificate.

"On June 8, 1921, Youngblood became a voluntary bankrupt, and said Gensberger became the trustee of his estate in bankruptcy. On August 3, 1921, complainants wrote to Planters' Bank a letter inclosing the certificate to the bank, explaining how it had been transferred to complainants by Youngblood and asking that the bank transfer the stock to complainants on the books of the corporation. This letter was not answered, and on Au-

gust 16, 1921, complainants wrote to the bank again, quoting the letter of August 3rd, and asking for a reply, and thereupon the bank, through said Mr. Thayer, either in reply to complainant's letter of August 3rd, or their letter of August 16th, wrote complainants that the bank was claiming a lien on the stock under the provisions of its charter quoted above, and therefore refused to make the change on the books or to surrender the certificate. This was the first claim the bank had ever made to any lien upon the stock.

"Complainants thereupon filed this suit, claiming its lien upon the stock for its indebtedness mentioned above. The bank does not dispute the above-mentioned indebtedness in favor of complainants, and does not deny that complainants are entitled to a lien upon the stock for their indebtedness, but contends that such lien in favor of complainants is inferior and subordinate to the lien of the bank for its indebtedness evidenced by said note dated February 10, 1921, by virtue of the above quoted charter provision. Complainants do not deny that Youngblood is indebted to said bank as evidenced by said note. It is further agreed that said indebtedness due complainants and said indebtedness due said bank are each more than the value of said certificate. Said debt due complainants and said debt due said bank are both past due, and no part of either has ever been paid. Said certificate was introduced in evidence, and is now in the custody of the court.

"The court rendered a final decree, fixing the indebtedness due complainants as set forth above in the sum of one thousand nine hundred forty-nine dollars and forty-four cents which amount is correct, and also decreed that complainants' indebtedness constituted a first and paramount lien upon said stock, and ordered said certificate sold by a commissioner for the satisfaction of said debt due complainant. The issue before the supreme court, by agreement, is solely whether or not the lower court erred in decreeing that said indebtedness

due complainant constituted a paramount lien upon said stock, or whether said bank is entitled to a paramount lien upon said stock to secure said indebtedness in its favor.''

The contention of the appellant, in short, is that under its charter it had a superior lien upon the certificate of stock as against the assignment of the stock by Young-blood to the appellees; that the legislative authority, expressed in the charter and duly recorded, validity impressed a lien upon the stock of any stockholder to secure the payment of any indebtedness that such stockholder might owe to the bank; that any statutory provi-expressed in the charter and duly recorded, validly impairment of contract under the Constitution, and that section 3606, Hemingway's Code (chapter 124, Laws of 1914) cannot, for this reason, defeat the lien of the bank given by its charter.

The appellees urge that section 3606, Hemingway's Code, invalidates the provisions of the bank's charter so far as it gives a lien against the stock of a stockholder who may become indebted to the bank. This section provides in substance that no bank shall accept as collateral security nor be the purchaser of its own capital stock, except where such collateral taken or the purchase made shall be necessary to prevent the loss upon a debt previously contracted in good faith with the bank by the stockholder. It is our judgment that the above section Hemingway's Code, section 3606) has the effect of prohibiting any lien upon the stock of the stockholder as given in the bank's charter, except where the bank takes such stock in order to prevent the loss of a previous debt due the bank by the stockholder.

The statute is valid as a reasonable regulation of the affairs of the bank, is based upon public policy, and has an obvious purpose. *Bank of Oxford* v. *Love,* 111 Miss. 699, 72 So. 133, 8 A. L. R. 894. The right to regulate was not surrendered by the state in granting the charter. Therefore we think the lien of the appellees upon the

certificate of stock here involved was paramount to the claim of the bank. Because if it be conceded that the bank undertook in this case to secure or impress a lien upon the certificate of stock in order to prevent the loss of a previous debt due by the stockholder to the bank, still this would not defeat the lien of the appellees because at the time the bank undertook to obtain or assert a lien upon the stock for the debt of the stockholder, the stock had already been assigned and delivered to the appellees and the bank could secure nothing, since Youngblood had already assigned his right and title in the stock to the appellees before appellant attempted to assert its lien for a previous debt. 14 C. J. p. 790.

The judgment of the lower court is affirmed.

*Affirmed.*