STATE *et al. v.* BELLINGER *et al.*

(Division B.   October 27, 1947.)

[32 So. (2d) 286.   No. 36561.]

**Greek L. Rice**, Attorney General, by **John E. Stone**, Assistant Attorney General, for appellant.

**Henley, Jones & Woodliff**, of Jackson, for appellees, Paul P. Bellinger, E. L. Trenholm, and Leland Speed.

**Flowers, Brown & Hester,** of Jackson, for appellee, Capital National Bank.

Argued orally by **John E. Stone**, for appellant, and by **George Woodliff**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

On September 18, 1933, the land in controversy here was owned by, and assessed to, the Capital National Bank of Jackson, and on that day it was sold to the State for the 1932 taxes due thereon. There is no controversy as to the tax procedure. The issue in the case is whether or not Chapter 79, Laws of 1938, now Section 4109, Code of 1942, is violative of the 14th Amendment to the United States Constitution. The Statute to which we refer reads as follows:

"Neither a corporation (except as herein provided) nor a nonresident alien, nor any association of persons composed in whole or in part of nonresident aliens, shall directly or indirectly, purchase or become the owner of any of the public lands; and every patent issued in contravention hereof shall be void. Provided, however, that a banking corporation owning such tax forfeited lands or

holding a mortgage or deed of trust thereon at the time of the sale to the state and whose mortgage or deed of trust is still in force and effect, may purchase such lands, regardless of acreage, owned by it as aforesaid or on which it held a mortgage or deed of trust; provided, further, that in event of a purchase by such corporation as a mortgagee such lands shall be held for the benefit of the mortgagor subject to all the terms and conditions of the mortgage or deed of trust held by the purchasing banking corporation and upon payment of the debt secured by such mortgage or deed of trust, together with interest and incidents, such banking corporation shall in that event reconvey such lands to the original mortgagor, his heirs or assigns."

The particularly pertinent part of the statute to be considered is: "Provided, however, that a banking corporation owning such tax forfeited lands . . . at the time of the sale to the state . . . may purchase such lands, regardless of acreage, owned by it as aforesaid." The Capital National Bank, a banking corporation, as stated supra, was the owner of the land when sold to the State for taxes, the title thereto in due course maturing in the State of Mississippi. Thereafter, on October 29, 1940, the Capital National Bank repurchased from the State this same land, and proper patent was executed and delivered to it, as by law in such cases made and provided. There is no challenge as to the procedure in the repurchase and patenting this land to the Bank. There is only the claim that the statute violated the Federal Constitution.

Subsequently to the repurchase by the Bank, complainants, along with one Ainsworth, bought from the Bank certain undivided interests "in and to all of the oil, gas and other minerals in and under and that may be produced from said lands, together with the rights of ingress and egress for the purpose of exercising the right to remove and take from said premises said oil, gas and minerals," quoting from the original bill. Defendant Ainsworth

purchased the surface of the lands, with which we are not concerned. He was made a defendant because he refused to join the other complainants in this suit.

The bill, as stated, sought confirmation of complainants' title to the oil interests described therein, as set out above, and, in addition to defendant Ainsworth, the Capital National Bank and the State of Mississippi were also named as defendants, the latter under the authority of Chapter 309, Laws 1940, now Sections 1315 to 1322 inclusive, 1942 Code. Process, as required by law, was also had as to all other parties having or claiming any legal or equitable interests in the land involved and described in the bill of complaint.

To this bill, the Capital National Bank answered "that it wholly disclaims having or pretending to have any right, title, or interest in or to any of the property described in the bill of complaint; that said defendant has no objection to the relief prayed for in the bill of complaint being granted by the court." Defendant Ainsworth did not answer. The State of Mississippi answered, averring that it "admits all of the allegations as set out in said bill of complaint but denies that the complainants are the legal and equitable owners of the title to said lands involved therein for the reason that Section 6027 of the Mississippi Code of 1930, as amended by Chapter 79, of the Extraordinary Session, Laws 1938, prohibits a corporation in purchasing state owned lands."

The State's answer was also made a cross-bill, averring "that the Capital National Bank is a banking corporation and is not authorized under the statutes to purchase state owned lands and that the patent so issued was void and in contravention to the law and public policy." The State prayed that it be decreed to be the owner of the property, and for other relief. Complainants answered the cross-bill, and among other things, set forth their claim "that under and by virtue of Chapter 79, Laws of 1938, Extraordinary Session, Section 4109, Mississippi Code Annotated 1942, that a banking corporation owning tax for-

feited lands at the time of the sale to the State is authorized to purchase such lands, regardless of acreage, owned by it as aforesaid.'' Demurrers were also interposed to the cross-bill of the State, on the grounds that there is no equity on the face thereof; and that it states no cause of action; and that ''Section 6027, Mississippi Code of 1930, as amended by Chapter 79 of the Extraordinary Session of the Laws of 1938 (Section 4109, Mississippi Code of 1942), does not prohibit a banking corporation from purchasing state owned land.'' It must here be borne in mind, however, that the statute, permitting banks to buy tax forfeited lands from the State, provides that the purchasing bank must have owned the land when it was sold to the State for taxes, in order to authorize its repurchase from the State by the bank.

The demurrers were sustained by the chancellor, and the State prosecutes this appeal here, assigning errors pertinent to its contention that the court erred in not overruling the demurrers. As stated, supra, the contention of the State is that the Section 4109, Code 1942, violates the Fourteenth Amendment to the Constitution of the United States, prohibiting any state from making or enforcing any law which shall deny to any person within its jurisdiction the equal protection of the law.

The Attorney General argues that the statute is class legislation, in that it grants privileges to Banking Corporations, not granted to all corporations, citing 16 C. J. S., Constitutional Law, Sec. 489, p. 954, where, among other statements, it is declared that ''the term 'class legislation' is that which makes improper discrimination by conferring privileges on a class arbitrarily selected from a large number of persons standing in the same relation to the privileges, without reasonable distinction or substantial difference.''

In our jurisprudence we have announced that ''It has been too often held that the Legislature has wide discretion, and, if the classification is reasonable and embraces all of those of the class therein, then the law is general,

not local, and the classification has a reasonable relation to the purpose sought to be attained—in other words, the classification must be germane to the subject-matter of the legislation. . . . The thing to look at is the object to be accomplished, and whether or not the classification is reasonably expected to attain that object and is germane thereto." Clark v. State, 169 Miss. 369, 383, 152 So. 820, 823.

A State Department of Banking, established by the Legislature in 1914, having broad powers of supervision over the banks of this State, established banks to be in a class by themselves by the inherent nature of the legislation— as a matter of state or public policy. Certain special laws appertaining to banks alone are incorporated in this particular legislation, and certain rules and regulations of examination, inspection, reports and controls apply alone to banks, which could not operate on other corporations. This is sufficient recognition by the Legislature that banks reasonably constitute a separate class in the category of corporations, regardless of the statute here involved. The establishment of the Mississippi State Banking Department has been held to be a valid exercise of constitutional power granted the State Legislature. Bank of Oxford v. Love, 250 U. S. 603, 40 S. Ct. 22, 63 L. Ed. 1165, affirming judgment in 111 Miss. 699, 72 So. 133, 8 A. L. R. 894.

The fact that building and loan associations and insurance companies sustain somewhat similar relations to state policy, and also have some like functions and powers themselves, does not integrate them into the same classification with banks, so as to form the basis for a claimed discrimination against them by the statute here involved. A bank in addition to being a corporation for profit, making loans, taking mortgages, and dealing in investments, receives funds for deposit, subject to both checking and saving accounts; acts as trustee and in many other fiduciary capacities, is a depository of public funds, and has other points of difference, all clothing it especially with a

public interest and putting it inescapably in a class by itself.

In the dark days of the depression, the National Government recognized this vital characteristic of banks, as peculiarly affecting the public interests, and declared a national banking holiday, affecting all banks. This action probably saved this Nation from chaos, ruin and insolvency. So, the Legislature of Mississippi, in our judgment, can be reasonably said to have had in mind that when a bank in such troublous times was compelled to let its properties be sold to the State for taxes, it should, when circumstances later enabled it to do so, be permitted to recover those assets otherwise lost, in the interest of strengthening its solvency, and continued usefulness and service to the public, and to protect affected citizens generally from financial loss. We are not to be understood, however, as holding this right of repurchase by banks under the terms of the statute is to be exercisable only during periods of National or Statewide economic or financial disaster or depressions. All banks in this State without differentiation as to size, location or otherwise, are granted equal privileges by this statute.

In Lowry, Ins. Com'r, et al. v. City of Clarksdale et al., 154 Miss. 155, 122 So. 195, 196, we quoted from Cooley's Constitutional Limitations, Vol. 2, 8th Ed., pp. 824, 825, as follows: "The guaranty of 'equal protection of the laws' . . . . does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in privileges conferred and liability imposed. It is not infringed by legislation which applies only to those persons falling within a specified class, if it applies alike to all persons within such class, and reasonable grounds exist for making a distinction between those who fall within such class and those who do not."

Here, we have a banking corporation, clothed with a peculiar public interest, compelled to let some of its assets go for taxes during a period of national financial stress. This condition affected all banks, not only in Mississippi, but throughout the Nation. By recovering this land, forming a part of its assets, the bank was doing its duty to the public and its depositors. It is to be commended for repurchasing such assets, as soon and as quickly as conditions thereafter enabled it to do so—not for itself alone, but for the public as well. We think the legislation was and is wise, was and is reasonable, not arbitrary, not class legislation, and is germane to the purposes to be reasonably accomplished thereby. See City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195, 198, where we said: "Under these settled principles, if and when the commercial and financial conditions of the country, and particularly within the state, have become such as to justify it, for the safety and soundness of banks and their preservation for the public service, the Legislature could exempt all banks from all taxation, so long as the predicate conditions continued to exist."

Here, it may be said, the real power we are discussing is one vested in the State Legislature to dispose of such lands in the manner in which its wisdom dictates. In Fletcher v. Peck, 6 Cranch 87, 3 L. Ed. 162, at page 175, it is said: "That the legislature of Georgia, unless restrained by its own constitution, possesses the power of disposing of the unappropriated lands within its own limits, in such manner as its own judgment shall dictate, is, a proposition not to be contraverted. The only question, then, presented by this demurrer, for the consideration of the court, is this, did the then constitution of the State of Georgia prohibit the legislature to dispose of the lands, which were the subject of this contract, in the manner stipulated by the contract?" And, in 50 C. J. 1140, Section 585, it is announced that: "The legislature has the right to prescribe who may become purchasers of

state lands.'' We are of the opinion that here the State Legislature has exercised its inherent power in a way that is not only free from discrimination, as contemplated by both State and Federal Constitutions, but wisely in furtherance of a sound public policy.

In view of what we have said above, in our judgment, the action of the chancellor in sustaining the demurrers to the cross-bill of the State was correct, and will be and is affirmed and remanded.

Affirmed and remanded.